**UNITED STATES of America**

v.

**Robert R. ANDERSON, Defendant**

**No. CRIM.04–85–P–H.**

United States District Court,
D. Maine.

April 20, 2005.

Halsey B. Frank, Office of the United States Attorney, District Of Maine, Portland, ME, for United States of America.

Gisele M. Nadeau, Gisele M. Nadeau P.A., Portland, ME, for Robert Anderson, Defendant.

## SENTENCING MEMORANDUM

HORNBY, District Judge.

A sentence within the United States Sentencing Guideline ("Guideline") range here would be 18 months. After an evidentiary hearing as well as character and victim statements, I imposed the Guideline sentence of 18 months, but used a Zone C split sentence (nine months in prison; nine months home confinement), *see* Guideline § 5C1.1(d)(2), a modest variance from the Guidelines.[1] This is my written explanation of why I used the Zone C flexibility rather than the strict Guideline sentence after considering the factors set forth in 18 U.S.C. § 3553(a), as instructed by *United*

*States v. Booker*, —— U.S. ——, —— – ——, 125 S.Ct. 738, 764–65, 160 L.Ed.2d 621 (2005).

The federal crime for which the defendant is being sentenced is possession of two rifles and ammunition by a prohibited person (he has two past domestic violence misdemeanor convictions, in 1990 and 2000). 18 U.S.C. § 922(g)(9). The conduct that gave rise to the federal conviction occurred December 15, 2002. According to the defendant's then ten-year-old daughter, both her parents came home drunk. Her mother then passed out on the couch, and her father, the defendant, slapped her mother in the face and slapped or punched her in the stomach in trying to wake her and take her to bed. The mother tried to call the police, but the defendant hung up the phone. He then chased her into the bedroom and got a rifle from the closet. She yelled to her daughter that the defendant had a gun and that the daughter should run to the neighbors for help. The daughter did so. At some unidentified point during the daughter's run, the defendant discharged a rifle into a snowmobile.

The defendant pleaded guilty in state court to criminal threatening with a dangerous weapon; assault; and obstructing the report of a crime. On July 21, 2003, he was sentenced to 3 years imprisonment, all but 6 months suspended, and 3 years probation. He has served his state jail time, and was released on November 28, 2003. So far his state probation has been without incident. He maintains steady employment as a heavy equipment operator. Since December 15, 2002, he and his wife have both been free of alcohol, and he has successfully completed a batterer's intervention program. He was not indicted

---

1. Given the defendant's criminal history, Category I, a sentence of 16 months would be in Zone C of the Sentencing Table.

federally until July 28, 2004. His wife is currently unable to work or do chores around the house because of a back condition, and is confronting imminent back surgery. The couple's daughter is now twelve years old, about to turn thirteen. The family remains intact and desires to remain so. Even with the defendant's income, the family has a negative cash flow, a financial condition that will be substantially worsened without his income. They have modest equity in their house that, if it will support additional borrowing, will be completely consumed by a year's imprisonment. (The presentence report estimates the home equity at $20,000, but the family has outstanding credit card debt of $2,800, and current monthly expenses are $1,571.)

There is good reason that Congress has made it a federal crime for people like the defendant to possess firearms. December 15, 2002, could easily have been the ultimate tragedy for this family, with a family member seriously injured or dead. It is entirely appropriate that the defendant serve a federal sentence on top of his state jail time. But now, 28 months later, I deal with a family that has confronted its issues and, for these 28 months, has been dealing with them successfully. To send this defendant back to prison now for a prolonged time will take away his job, eliminate all family income, eliminate the family's assets, and jeopardize both his wife's surgery and her ability to maintain the household for her daughter.[2] Of course, there are no guarantees that anyone will stay free of alcohol or domestic abuse, and at least while in custody the defendant cannot commit further acts of domestic violence. Moreover, general deterrence is always a concern in sentencing. But both general and specific deterrence are satisfied here

by the 18–month split sentence. An additional 9 months in prison would not result in significantly greater community protection than the 9 months home detention with electronic monitoring, prohibition of alcohol and the other conditions I have ordered. Moreover, the living patterns established and reinforced by intensive supervision and restrictions in the home environment after a 9–month, rather than an 18–month, interruption are more likely to lead to long-range protection of the defendant's family and community than merely a longer federal prison sentence.

I conclude that the § 3553(a) sentencing factors here counsel a slight variance from the Guidelines, namely, the use of Zone C devices for the 18–month Guideline sentence I have imposed. That is "a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in" § 3553(a). *See* 18 U.S.C. § 3553(a).

So Ordered.

---

**2.** Family ties and responsibilities are a discouraged, but not a prohibited, ground for a Guidelines departure. Guideline § 5H1.6.

Since the parties have not addressed its impact in this case, however, I do not rest my decision upon it.